LUNSFORD DOLE PHILLIPS #4407
7 Waterfront Plaza, Suite 400
500 Ala Moana Blvd.
Honolulu, Hawaii 96813
Tel: (808)543-2055; Fax (808)543-2010
lunsfordp001@hawaii.rr.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA CLARKE | ) |
| | ) CIVIL NO. |
| | ) |
| Plaintiff | ) |
| | ) COMPLAINT |
| v. | ) |
| | ) |
| ASSOCIATION OF APARTMENT | ) |
| OWNERS OF WAIKIKI SHORE, | ) |
| INC.; CASTLE RESORTS & | ) |
| HOTELS, INC. | ) |
| | ) |
| Defendants | ) |
| | ) |

## COMPLAINT

Plaintiff LINDA CLARKE, through her undersigned counsel, avers and alleges violations of state and federal law as stated herein and seek appropriate relief as follows:

I.  INTRODUCTION

Plaintiff Linda is currently a resident of California. She and her family have strong ties to Hawaii. In the early summer of 2015 the Clarkes

flew to Honolulu to attend Mr. Clarke's Punahou class reunion. They travelled with Courtney, their 14 year-old daughter, and Carter, Ms. Clarke's service animal, a 9 year-old black Lab. Ms. Clarke has long coped with life threatening, insulin-dependant diabetes and relies on Carter to monitor her blood sugar levels. Carter has been professionally trained to sense dangerous blood sugar levels and alert Ms. Clarke before she slips into a diabetic coma.

As set forth below in detail, the Clarke family had reservations to stay at the defendants' hotel, the Waikiki Shore. However, the defendants not only denied plaintiffs permission to stay at their hotel solely because of Carter, but they also subjected the plaintiffs to malicious mistreatment, manifesting conscious indifference to their civil obligations.

II.   JURISDICTION AND VENUE

This Court has original jurisdiction under 28 U.S.C. § 1331 because a federal question is raised herein, namely the alleged violation of the Americans With Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C. §§ 12101 et seq., and has pendant jurisdiction over the parallel state law claim of violation of Hawaii Revised Statutes, Chapter 489. Venue in this Court is proper because all events material hereto occurred within the District of Hawaii.

III.   PARTIES

1. Plaintiff LINDA CLARKE (also known as Dede Clarke) has had, had at the material time, and will always have a physical disability. Her physical disability is a genetic disorder called diabetes mellitus type1, more commonly known as insulin-dependant diabetes. Ms. Clarke has been coping with this permanent, currently incurable disorder virtually all her life.

       Without proper medication and treatment her disability can be fatal. Like all diabetes type I disabled people she centers her life around the level of the glucose in her bloodstream.

2. For seven years Ms. Clarke has been protected from inadvertently allowing her glucose to reach dangerous levels by service dogs. Her service dogs have been professionally trained to monitor her glucose level and alert her if the dog senses a dangerous level.

3. At the material time and at the current time Ms. Clarke is protected by a service dog named Carter. Carter was trained by D4D Dogs for Diabetics in Concord, CA. This facility has been training service dogs for eleven years. Carter was not only trained there originally, he is regularly retrained and recertified there, most recently in October 2015.

4. Gary Clarke was at the material time and is still married to Dede. He was born and raised in Hawaii and attended Punahou. He is currently a small business entrepreneur who owns and runs a clothing company in San Ramon, CA.

5. Defendant ASSOCIATION OF APARTMENT OWNERS OF WAIKIKI SHORES, INC. [hereinafter "AOAO"] is a domestic corporation, duly-registered with the State of Hawaii in good standing. Its agent is Hawaiiana Management Co. Ltd. The AOAO controls the property located at 2161 Kalia Rd. in Waikiki known as the Waikiki Shore hotel. This hotel operates as a public accommodation, offering among other services transient lodging.

6. Defendant CASTLE RESORTS & HOTELS, INC. [hereinafter "Castle"] is a domestic corporation, duly-registered with the State of Hawaii in good standing. CASTLE markets, manages and operates the Waikiki Shore hotel services.

## IV. FACTS

7. Plaintiff and her husband flew to Honolulu on 6/12/15 aboard Hawaiian Airlines, accompanied by her daughter and Ms. Clarke's service dog.

8. Upon arriving at the hotel the plaintiff informed Castle that Carter was a service dog.

9. Plaintiff explained to Castle's hotel general manager that Hawaiian Airline and the State of Hawaii Department of Agriculture personnel had vetted Ms. Clarke's service animal and confirmed that Carter was a certified service animal.

10. Castle's hotel general manager informed the plaintiff that Castle only allowed guide dogs on the premises.

11. For the first of several times the plaintiff and Mr. Clarke explained to Castle's hotel general manager that a guide dog was one kind of a service dog and that Carter was another kind of service dog.

12. Over the next twenty-four hours the plaintiff and Mr. Clarke explained repeatedly to the defendants that the law requires Carter be allowed everywhere Ms. Clarke is allowed.

13. Later that day when the plaintiff and her family returned from certain class reunion activities, Castle's security guard informed

them they were being denied continued lodging and that the plaintiff must leave the hotel by noon the next day.

14. When the plaintiff entered their hotel room, she found a letter from Castle's hotel staff, stating as the security guard had stated, that she had to leave by noon the next day.

15. The Clarkes had confirmed reservations for seven days and had no intention of leaving the Waikiki Shore earlier than seven days.

16. At approximately 8:30 a.m. the next morning Castle's hotel general manager knocked on their door, repeating Castle's demand that plaintiff and Carte vacate their room and leave the premises by noon.

17. The Clarkes stated that forcing them to leave against their will because Carter was not a guide dog was a violation of law. Castle insisted they leave even if it was against the plaintiff's will.

18. The Clarkes had other family members staying at the Waikiki Shore and had no interest in checking out and checking into a different hotel.

19. Mid-morning Ms. Clarke and her daughter were preparing to leave the room to go shopping when the power to the room became erratic, cutting out and then coming back on.

20. Just after noon as Mr. Clarke was in their room, working on his computer, when the power cut off entirely and did not come back on.

21. When Ms. Clarke and her daughter returned to the room and learned the defendants had not restored the power, she called the police.

22. When the police arrived, they gathered information from both the Clarkes and the defendants. At this time the police spoke with the President of the AOAO, Richard Eliott, who demanded the police enforce the AOAO's insistence that the plaintiff and Carter leave the premises.

23. The defendants refused to allow the plaintiffs to stay on the premises because of Carter, insisting they leave immediately.

24. In the course of these events Mr. Clarke spoke with Mr. Eliott who confirmed that he was President of the AOAO and that he was acting in his capacity as AOAO President to enforce the AOAO's only guide dog policy.

25. The Clarkes concluded they were not being given any option other than to leave the Waikiki Shore against their will.

26. Mr. Clarke requested Mr. Eliott to restore the power to their room while they repacked their bags and emptied the refrigerator. Mr. Eliott agreed to do so. But he did not; the power was never restored.

27. On 6/18/15 the Clarkes returned to the Waikiki Shore to visit briefly with members of their extended family who were still staying there.

28. As the Clarkes were being escorted by a member of their extended family member to their guest room, they were stopped by the Castle's security guard. Plaintiff had Carter with her, assisting her as usual.

29. The Clarkes informed the security guard that they were guests of their extended family members for cocktails before dinner.

30. Shortly later the same security guard, Castle's hotel building manager and several police officers came to the plaintiff's extended family members' room.

31. Plaintiff was ordered off the premises immediately and was given a written trespassing citation, forbidding her to enter the premises upon criminal penalty- regardless of being assisted by Carter or not.

32. Plaintiff was traumatized with physical, emotional and financial consequences.

V. CAUSES OF ACTION

34. Plaintiff alleges the defendants have violated The Americans With Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§12101.

35. Specifically the plaintiff alleges the defendants violated ADA Title III's prohibition of discrimination by public accommodations, 42 U.S.C. § 12182.

36. Plaintiff further alleges the defendants have violated the state law analogue to the ADA, namely Hawaii Revised Statutes Chapter 489.

37. Specifically the plaintiff alleges the defendants violated HRS §489-3, prohibiting denial of the full and equal enjoyment of a public accommodation's services on the basis of disability.

38. Plaintiff asserts she is a qualified person with a disability, namely a person who has Type 1 diabetes, a physical

condition that substantially limits her in the major life function of eating and several other major life functions.

39. Plaintiff asserts the AOAO is a public accommodation, namely the controlling entity of a hotel.

40. Plaintiff asserts Castle is a public accommodation, namely the operator and manager of a hotel.

41. Plaintiff alleges she was denied the defendants' services on the basis of her disability.

42. Specifically the plaintiff asserts she was denied defendants' services because of her service animal.

43. Plaintiff asserts the defendants acted with deliberate, knowing and conscious indifference to their civil obligations to accord the plaintiff her civil rights.

44. Plaintiff asserts the defendants acted with intentional malice to oppress the plaintiff into acquiescing to their illegal conduct.

45. As a direct and proximate result of the defendants' tortious misconduct the plaintiff has sustained physical and non-physical injuries of a nature and to an extent to be shown at trial.

46. Plaintiff has exhausted her administrative remedies by timely filing Charge HCRC No. PA-O-0849, receiving her Right To Sue on December 24, 2015, and timely filing this lawsuit.

VI. RELIEF

47. Plaintiff seeks judgment in her favour and against one or both of the defendants.

48. Plaintiff seeks equitable relief from one or both defendants to ensure the absence of similar illegalities in the future by the

mandatory civil rights training of all defendants' members and employees involved in their hotel enterprise.

49. Plaintiff seeks relief from both defendants in the form of monetary general, special and punitive damages.

50. Plaintiff seeks payment of all litigation costs and attorney's fees from one or both defendants.

DATED: Honolulu, Hawaii, February 9, 2016

/s/ Lunsford Dole Phillips
  Attorney for Plaintiffs